1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  JOSE MORENO,                              No. 2:15-cv-0704 TLN CKD P

12                  Petitioner,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14  ELVIN VALENZUELA,

15                  Respondent.

16

17        Petitioner, a state prisoner, is proceeding pro se with a petition for writ of habeas corpus

18  pursuant to 28 U.S.C. § 2254.  He challenges his 2013 conviction for stalking, wiretapping,

19  burglary, and other offenses, for which he was sentenced to a total prison term of nineteen years

20  and four months.  (ECF No. 1 ("Ptn.") at 1.)  Respondent has filed an answer (ECF No. 19), and

21  petitioner has filed a traverse (ECF No. 21).  Upon careful consideration of the record and the

22  applicable law, the undersigned will recommend that the petition be denied.

23                              BACKGROUND

24        In its affirmation of the judgment on appeal, the California Court of Appeal, Third

25  Appellate District, recounted the facts underlying petitioner's conviction as follows:

26

27            Tomasa Duenas met defendant through the social network My
              Space. They became a couple in April 2007; she lived in
              Sacramento and defendant was in Berkeley. In May 2009,
28            defendant moved to New York to complete a master's degree at

                                          1

Columbia University. Duenas broke up with defendant in January 2010 because she could not see the relationship going anywhere. They stayed in touch and had a cordial relationship.

Around February or March, she decided to give defendant another chance. He came to visit her at her residence in March. During that visit, without her knowledge, he installed two spyware programs on her computer. The first, Spector Pro, recorded computer activity such as e-mail, chats, instant messaging, and websites visited. The second, eBlaster, e-mailed the records of the computer activity to a designated address. The activity reports were e-mailed to defendant.

In April, defendant insisted on coming out to help Duenas move. He gave her a gift, a wireless Internet router. He set it up, providing the router name, East Oakland, and the password. Duenas had Internet service through Comcast; the wireless router connected to the modem by cable.

Defendant graduated in May and returned to Sacramento. He stayed with Duenas a few days a week; the rest of the time he stayed with his family in Watsonville. On July 16, they argued and broke up.

On July 23, Duenas noticed her tickets to a concert were missing from her apartment, and thought that defendant had taken them. She sent him a text message, asking if he had a way to get in her apartment. She replaced the tickets and went to the concert. Defendant also was at the concert, and texted her with a specific dedication before a particular song. The police later found a photograph of Duenas's calendar, taken July 23, in defendant's possession.

A few days later, Duenas returned home from work early and found defendant in her bedroom. She asked him to leave and he did. On July 31, Duenas met Victor Garcia. The next day Garcia gave her a note and a music CD. She put the note in a shoe box with other keepsakes, but later noticed the note was missing.

On approximately August 1, Duenas went to defendant's new apartment and made dinner for him. She spent the night and they were intimate. The next day, defendant went to Duenas's and tried to initiate sex. She said no and told him that the night before had been a mistake. Defendant persisted and Duenas gave in. On August 3, Duenas came home and found defendant by her bed. At first, he refused to leave, saying he wanted to talk, but he eventually left. She found his water bottle in the closet and texted him, asking how long he had been in her closet. He asked if he could come get the bottle. Although she said no, defendant showed up and pushed his way into her apartment. Defendant followed her into the bedroom and kept saying "get naked" in Spanish. He tried to pull her shorts down. She began to cry and defendant kept pulling at her shorts until he got them off. In a demanding tone, he told her to "show me how you're going to give it to Victor." She kept telling him to leave and defendant responded that if she forced him to leave he would publish nude pictures he had of her. She said she would sue him and he replied he had nothing to lose. Duenas spent

30 minutes in the bathroom crying. Defendant tried to bargain with her; if she would attend counseling to work on her "issues," he would leave her alone. Eventually defendant began a "rant" about how he was sorry and his jealousy was due to his insecurities. He finally left after she told him he had lost her forever.

Duenas had her apartment manager change her apartment's locks. She found the eBlaster software on her computer and had an Apple computer technician remove it. She also changed the password on her computer. On August 6, at the urging of friends, Duenas reported defendant to the police, but did not ask to have charges filed.

The stalking continued. On August 24, Duenas could not log in to her computer because of password difficulties and discovered the eBlaster software was back on her computer. She also noticed that her stuffed animals were rearranged and a box of mementos was missing. Also missing were a letter requesting to be let out of her lease and the police report she had filed. A photograph of a wedding invitation on her refrigerator, taken that day, was later found in defendant's possession. On August 27, Duenas found two cameras, one hidden under her stuffed animals and the other under the dresser. These cameras had recorded video with sound. Duenas contacted the police, who suggested she call defendant and ask him about the cameras. He said that was "a loaded question," but did not deny he put them in her apartment.

Duenas went to stay with a friend. Defendant took numerous photographs of Duenas while she was in the bathroom at her friend's—apparently from immediately outside the apartment looking in. The friend heard noises at night and asked Duenas to leave due to concerns about safety. Duenas first relocated to a house in Folsom and then to a house on Castro Way that had an alarm system. She did not tell her friends where she was living. She obtained a restraining order against defendant.

On September 26, Garcia visited her and spent the night. They were intimate on several occasions that night and disposed of used condoms in the bathroom trash. Duenas had waxed her bikini line before his visit. The used wax strips and condoms were later found in a plastic bag during a search of defendant's residence.

Duenas began having problems with the alarm; she could not set it. She contacted the alarm company; the technician told her the alarm had been tampered with and the sensors had been removed.

On October 2, Duenas went out with Garcia to celebrate his birthday. While she was out, the alarm was triggered and the police responded and asked Duenas to come home. Duenas and Garcia returned to the house and Duenas gave the police a key. A canine unit entered the house and defendant came out of the house and was arrested. Defendant told Garcia "happy birthday" in Spanish.

Two searches of defendant's residence, including his computer, revealed a wealth of evidence. Defendant had a computer file that

3

he had labeled "stalking." Inside were photographs of items in Duenas's apartment establishing on what dates defendant had entered the apartment. Defendant had e-mailed himself detailing Duenas's sexual activities with Garcia and indicating that defendant had telephoned her residence once while she and Garcia were having sex and had (somehow) observed their activity in response to his call. The police found jewelry and other items taken from Duenas's apartment, as well as a lock-picking kit. Defendant had accessed the hidden cameras and received videos from them over the Internet more than 40 times. There were numerous intercepted e-mails and chats. Defendant had monitored and documented Duenas's menstrual cycle. In one document, defendant had written, "I'm proud/pleased that she is so scared for her safety that she avoids being home especially by herself."

Defendant admitted he installed the spyware and cameras, photographed Duenas, broke into her apartment on several occasions, and took some items. His defense was that he never wanted to scare her; he just wanted to "[k]eep her company without her knowing it."

People v. Moreno, 2014 WL 6809702, **1-3 (Cal. App. 3 Dec. 3, 2014), also at ECF No. 19, Ex. A. The facts as set forth by the state court of appeal are presumed correct. 28 U.S.C. § 2254(e)(1).

Petitioner was convicted of eleven counts of first degree burglary, three counts of unauthorized computer access, three counts of wiretapping, and two counts of stalking, for which he was sentenced to a prison term of nineteen years and four months. (Lod. Doc. 10 at 1.)

Petitioner appealed his conviction (Lod. Docs. 3-6), and on December 3, 2014, the California Court of Appeal for the Third Appellate District modified the crime prevention fee but otherwise affirmed the judgment. Petitioner filed a petition for review in the California Supreme Court, which was denied on February 25, 2015. (Lod. Doc. 8.)

Petitioner filed a habeas petition in the Sacramento County Superior Court; it was denied in a reasoned opinion on April 24, 2014. (Lod. Docs. 9-10.) A second petition in the Santa Cruz County Superior Court was barred as successive on August 12, 2014. (Ptn. at 3, 15.) The state court of appeal summarily denied his next petition on September 18, 2014 (Lod. Docs. 11-12), and the California Supreme Court summarily denied his next petition on February 25, 2015 (Lod. Docs. 13-14).

////

4

On April 17, 2015, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, No. S2258742, concerning his prisoner classification, which is pending. (Lod. Doc. 15.)

Petitioner constructively filed the instant action on March 20, 2015. (Ptn. at 6.)

<u>ANALYSIS</u>

I. <u>AEDPA</u>

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Id.</u> at 784-785, citing <u>Harris v. Reed</u>, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." <u>Id.</u> at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable

5

application of federal law is different from an incorrect application of federal law.'" Harrington, supra, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "a habeas court must determine what arguments or theories supported or ... could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that

6

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington</u>, <u>supra</u>, 131 S. Ct. at 786-787.  Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court.  <u>Wright v. Van Patten</u>, 552 U.S. 120, 125 (2008).  Thus, extrapolations of settled law to unique situations will not qualify as clearly established.  <u>See e.g.</u>, <u>Carey v. Musladin</u>, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).  The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.  <u>Early v. Packer</u>, 537 U.S. 3, 9 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision.  <u>Early</u>, <u>supra</u>, 537 U.S. at 8. Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." <u>Himes v. Thompson,</u> 336 F.3d 848, 853 (9th Cir. 2003).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." <u>Johnson v. Williams</u>, 133 S. Ct. 1088, 1096 (2013).  "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim.  <u>Id</u>. at 1097.

II.  <u>Petitioner's Claims</u>

A. <u>Judicial Errors Violated Due Process</u>

Petitioner asserts four claims that he was denied his due process right to a fair trial as a result of the trial court's error.

Claims A1 & A2: Incomplete Defense/Instructional Error.  In Claim A1, petitioner

contends that the trial court denied him the opportunity to present a complete defense under

Holmes v. South Carolina, 126 S. Ct. 1727 (2016) (holding that arbitrary state evidence rule

violated a criminal defendant's right to a meaningful opportunity to present a complete defense).

Specifically, petitioner argues that he was unfairly prohibited from cross-examining the victim

about her sexual conduct and "from presenting relevant evidence pertaining to the couple's sexual

activity (i.e., videos and photographs)[.]"  (Ptn. at 30.)  Petitioner asserts that the victim made

inconsistent statements on this topic in the course of the investigation, and the "restricted

evidence went to the core of the defense's theory that [she] had a history of making false . . .

statements, including false accusations against petitioner."  (Id. at 31-33.)

In Claim A2, petitioner claims that the trial court committed instructional error under

United States v. Gaudin, 515 U.S. 506 (1995), by "removing an essential element of the crime of

wiretapping within its formulated instruction."  He claims the resulting instruction was

misleading to the jury.  (Ptn. at 36.)

In the last reasoned opinion[1] on Claims A1 and A2, the Sacramento County Superior

Court wrote on state habeas review:

> First, petitioner contends that he was denied a fair trial when the
> court allegedly improperly restricted his asserted right to cross
> examine the victim about her sexual conduct during the relevant
> time period.
>
> Second, petitioner contends that the court erred in instructing the
> jury of the elements of wiretapping, contending that the court
> lightened the prosecution's burden of proof by removing one of the
> required elements.  Specifically, he claims that the court
> inappropriately permitted the jury to find him guilty on the basis of
> a communication alone, without having to find that he had tapped a
> telegraph, telephone line, or cable.
>
> . . .
>
> It is well established that the great writ cannot be used as either a
> substitute for appeal (In re Dixon (1953) 41 Cal.2d 756, 759) or as a
> second appeal.  (In re Waltreus (1965) 62 Cal. 2d 218, 225.)

---

[1] A federal habeas court will "look through" a silent state court denial to the last reasoned state court decision rejecting the same claim, if such a decision exists, and subject the underlying decision to § 2254(d) scrutiny. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Matters that could have been, but were not, raised upon a timely appeal from a judgment of conviction, or that were raised and rejected on appeal, cannot be raised via habeas for the first time.

Petitioner's claims that he was denied a fair trial when the court allegedly restricted his 'right' to cross examine the victim about her sexual conduct during the relevant time period and allegedly erred in instructing the jury should have been raised on appeal. Contrary to his assertion, the court's ruling on the People's in limine motion and instructions to the jury are part of the record and, therefore, are available for review by the appellate court. [FN 4] As none of these claims fall within one of the exceptions to Dixon/Waltreus, they are barred from review on habeas.

[FN 4: Petitioner currently has an appeal pending before the Third District Court of Appeal.]

(Lod. Doc. 10 at 1-3.) Review of the record confirms that petitioner did not raise these arguments on appeal, though petitioner points out that he raised them in a habeas petition as promptly as he could. (Ptn. at 15.)

As a general rule, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S. Ct. 1120, 1127 (2011). Procedural default can only block a claim from federal habeas review if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989).

In the instant case, the state court's invocation of Dixon serves as an independent and adequate state ground. See Johnson v. Lee, 136 S. Ct. 1802, 1804 (2016) ("Like all States, California requires criminal defendants to raise available claims on direct appeal. Under the so-called 'Dixon bar,' a defendant procedurally defaults a claim raised for the first time on state collateral review if he could have raised it earlier on direct appeal."). The Supreme Court has held that California's Dixon bar to state habeas claims constitutes an independent and adequate state procedural ground barring subsequent habeas relief in federal court. See id. at 1806. Therefore, Claims A1 and A2 are procedurally defaulted unless petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to

////

consider the claims will result in a fundamental miscarriage of justice.  Maples v. Thomas, 565

U.S. 266, 280 (2012).

The cause standard requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts to construct or raise the claim."  McCleskey v. Zant, 499 U.S. 467, 493 (1991) (internal quotations omitted).   The cause standard will be met, for example, where the claim rests upon a new legal or factual basis that was unavailable at the time of direct appeal, or where "interference by officials" may have prevented the claim from being brought earlier.  Murray v. Carrier, 477 U.S. 478, 488 (1986).   A petitioner may also show cause by establishing constitutionally ineffective assistance of counsel, but attorney error short of constitutionally ineffective assistance of counsel does not constitute cause and will not excuse a procedural default.  McCleskey, 499 U.S. at 494.  Here, petitioner has not shown that any external factor prevented his lawyer from raising these claims on appeal.  Nor has he shown, as discussed below, that his appellate counsel was constitutionally ineffective.

If a petitioner succeeds in showing cause, the prejudice prong of the test requires demonstrating "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  United States v. Frady, 456 U.S. 152, 170 (1982).  Here, even if petitioner could show cause for failing to appeal on these two grounds, he has not demonstrated prejudice.

As to Claim A1, Duenas testified at trial and was subject to extensive cross-examination on the subject of her relationship with petitioner.  (RT 738-841.)  The trial court determined that photos and videos documenting sexual encounters between petitioner and the victim were not relevant to any of the criminal charges on which petitioner was being tried (RT 191-195), and petitioner has not demonstrated prejudice from the omission of this evidence.  Even if Duenas had been impeached with inconsistent statements about her sexual conduct or the details of her relationship with petitioner in the summer of 2010, it is mere speculation that the jury would have disbelieved her other statements, relevant to the charged offenses and consistent with evidence that petitioner secretly videotaped her in her bedroom, monitored her email communications,

removed items from her house without permission, and other such actions that were the subject of the criminal charges.

Turning to Claim A2, Court Instruction No. 002 (Unauthorized Wiretaps) was based on California Penal Code § 631(a)[2]:

> To prove that the defendant is guilty of this crime the People must prove that:
>
> 1. The defendant by means of any machine, instrument, contrivance, or in any other manner:
>
> a. Intentionally tapped, or made any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system.
>
> OR
>
> b. Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state.

(CT 943.) Petitioner argues that part (b) of the instruction was deficient in two ways: "It failed to require the intercepted communication to have been 'over a telephone or telegraph line' AND 'while the message is in transit.'" (Ptn. at 38.) "There is no way that the jury could have known … that California's wiretapping law requires for any intercepted communication to be contemporaneous and over a telephone or telegraph line." (Id. at 39.)

However, on direct appeal, the state appellate court found that sufficient evidence supported petitioner's wiretapping convictions under Cal. Penal Code § 631(a). In relevant part, the court reasoned:

> Defendant was convicted of three counts of wiretapping (§ 631, subd. (a)). The first count related to the installation of the eBlaster software in March. The second two, counts 14 and 15, related to the cameras installed in late August. Defendant contends there is insufficient evidence to sustain the convictions on counts 14 and 15 because he did not intercept a communication sent over a wire. He

---

[2] There is no CALCRIM standard jury instruction on wiretapping under § 631(a). (See RT 1375.)

11

concedes his conduct may have violated the eavesdropping statute—section 632 or section 647, subdivision (j)—which proscribes secretly videotaping someone in certain circumstances. He contends, however, that we cannot modify the judgment to reflect violations of these statutes because they are lesser related, not lesser included, offenses.

"Subdivision (a) of section 631 prescribes criminal penalties for three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." (Tavernetti v. Superior Court (1978) 22 Cal.3d 187, 192.) "In enacting this statute, the Legislature declared in broad terms its intent 'to protect the right of privacy of the people of this state' from what it perceived as 'a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society.' (Pen. Code, § 630.) This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act. [Citation.]" (Ribas v. Clark (1985) 38 Cal.3d 355, 359 (Ribas ).)

At issue here is the second pattern of conduct—willfully attempting to learn the contents or meaning of a communication in transit over a wire. Section 631, subdivision (a) punishes anyone "who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state."

We recognize that in the usual wiretapping case, the private communication is being transmitted by one of the parties to the communication. Such was the case in the wiretapping count involving the eBlaster software where defendant intercepted Duenas's e-mail and chats. Here it was defendant who transmitted the pictures taken by the cameras that he secretly installed. But the statute, quoted ante, does not require that the victim actually transmit, only that the defendant intercept the communication "without the consent of all parties" or "in any unauthorized manner." (§ 631, subd. (a).) We acknowledge "the broad wording and purpose of the statute." (Ribas, supra, 38 Cal.3d at p. 360.)

. . .

Defendant's installing of hidden cameras, surreptitiously recording Duenas's conversations and activity, transmitting those recordings over the Internet through the unauthorized use of Duenas's router, and viewing those videos on his own computer encompassed more illegal acts than simply wiretapping. But his unauthorized transmission and viewing of those videos constituted wiretapping. There was substantial evidence to support his convictions for wiretapping in counts 14 and 15.

1    Moreno, 2014 WL 6809702, **3-4 (emphasis added).  Given the state appellate court's

2    conclusion that sufficient evidence supported petitioner's wiretapping convictions under Cal.

3    Penal Code § 631(a), petitioner cannot show he was prejudiced by the jury instruction on

4    wiretapping.  See Bradshaw v. Richey, 546 U.S. 74, 77 (2005) (state courts' interpretation of state

5    law, including one announced on direct appeal of the challenged conviction, binds a federal

6    habeas court).

7        In sum, petitioner has not established cause and prejudice that would excuse his

8    procedural default as to Claims A1 and A2, nor has he shown that failure to consider these claims

9    would result in a fundamental miscarriage of justice.  Thus these claims are barred on collateral

10   review.

11       Claim A3: Reasonable Doubt.  Petitioner asserts that the trial court precluded defense

12   counsel from effectively arguing about reasonable doubt to the jury, violating petitioner's right to

13   a fair trial.  Specifically, petitioner contends that his counsel was not permitted to argue that the

14   wiretapping statute required the intercepted communication "to be contemporaneous to its

15   transmission," as discussed in Claim A2.  (Ptn. at 43-49.)  At one point, the trial judge concluded

16   that "it's a misstatement of the law if [defense counsel] argues under the wiretap instruction that it

17   has to be while it is in transit."  (RT 1375.)

18       This claim was first presented to the California Court of Appeal and summarily dismissed.

19   The California Supreme Court also summarily dismissed the claim.

20       On collateral attack, a constitutional trial error requires relief only if it "had substantial

21   and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. 519.  The

22   Ninth Circuit has held that "the Brecht standard should apply uniformly in all federal habeas

23   corpus cases under § 2254."  Bains v. Cambra, 204 F.3d 964, 977 (9th Cir. 2000).  Here,

24   petitioner cannot show prejudice from the trial court's rulings on the elements of wiretapping

25   under Cal. Penal Code §  631(a) for the same reasons he could not show that the wiretapping jury

26   instruction was prejudicial.  Nor has he shown any constitutional error in this regard.  Thus Claim

27   A3 should be denied.

28   ////

1        Claim A4: Cumulative Error.  Petitioner argues that he was denied his due process right to

2    a fair trial due to cumulative error under Chambers v. Mississippi, 410 U.S. 284 (1973).  (Ptn. at

3    49-51.)  This claim was first presented to the California Court of Appeal, and then the California

4    Supreme Court.  Both summarily dismissed the claim.

5        Having reviewed the record of this action and petitioner's instant claims, the undersigned

6    concludes that petitioner has not shown entitlement to federal habeas relief on this ground.  See

7    U.S. v. Rivera, 900 F.2d 1462, 1471 (9th Cir. 1990) ("[A] cumulative error analysis should

8    evaluate only the effect of matters determined to be errors, not the cumulative effect of non-

9    errors.").  Thus claim A4 should be denied.

10   B.  Ineffective Assistance of Trial Counsel

11       Petitioner contends that his defense attorney, Jesse Ortiz, was constitutionally ineffective

12   under Strickland v. Washington, 466 U.S. 668 (1984), on several grounds, which he sets forth as

13   follows.

14       Claim B1(a): Inadequate Trial Preparation.  Petitioner claims Ortiz was not prepared for

15   trial as he failed to adequately investigate the facts or research the applicable law and procedure,

16   and also failed to present available witnesses and evidence.  "Section 631 and its established case

17   law make it abundantly clear that 'wiretapping' was not applicable to the proof made on . . .

18   Counts 3, 14 and 15," petitioner argues.  "It follows . . . that defense counsel should have

19   objected, with relevant authority in support[,]" to the jury instruction on wiretapping.  (Ptn. at 53.)

20   Petitioner further contends that defense counsel failed to object to the admission of the spyware's

21   activity reports and the hidden cameras' videotapes, evidence petitioner characterizes as

22   inflammatory and prejudicial.  (Id. at 54-55.)

23       As to the burglary charge based on the concert ticket in petitioner's possession, petitioner

24   asserts that Ortiz failed to introduce evidence that petitioner bought the ticket himself and

25   attended the concert with a group of friends.  (Id. at 55-60.)  Petitioner attaches declarations made

26   in January 2014 by three friends who attest that they socialized with petitioner before the July 25,

27   2010 concert and attended it with him.  (Ptn., Ex. 2.)  Petitioner also attaches his own 2014

28   declaration stating that, before trial, he told Ortiz that he decided to attend the concert while

vacationing with a group of friends in Las Vegas, that he bought his own ticket, and that he went to the concert with his friends. (Id.) Petitioner argues that Ortiz was ineffective in failing to investigate and present these witnesses. (Ptn. at 55-60.)

Claim B1(b): Failure to present stalking defense. Petitioner next claims that Ortiz failed to present petitioner's chosen defense to the charge of stalking, violating California law holding that "a defense counsel's traditional power to control the conduct of a case does not include the authority to withhold the presentation of any defense in the guilt/special circumstance stage of a capital trial when the defendant openly expresses a desire to present a defense at that stage and when there exists credible evidence to support that defense." In re Burton, 40 Cal. 4th 205, 213 (2006). Petitioner told Ortiz that he wished to present a "mens rea" defense to the charge of stalking, citing evidentiary support in the form of writings and statements he made during the relevant time period. (Ptn. at 60-61.) Petitioner argues that a competent attorney would have developed and presented evidence about petitioner's state of mind rather than "simply disputing the legal []sufficiency of the evidence produced by the prosecution." (Id. at 62.)

Claim B1(c): Failure to make offer of proof as to victim's sexual conduct. Petitioner asserts that, once the prosecutor introduced evidence of a possible sexual motive for stalking, Ortiz was ineffective in failing to make an offer of proof of the victim's and petitioner's sexual activities under Cal. Evid. Code § 354, thus compounding the error of this evidence being ruled inadmissible at the outset. (Ptn. at 64-66.)

In the last reasoned opinion on petitioner's ineffective assistance claims, the Sacramento County Superior Court set forth the Strickland test of deficient performance and prejudice and analyzed these claims as follows:

**a) Alleged Failure to Research Definition of Wiretapping**

Penal Code 631(a) reads, in pertinent part:

'Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to

15

the communication or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by . . .'

Petitioner's contention that Penal Code section 631 applies only to telephone and telegraphic messages which have been accessed by a third party with the consent of one of the participants is incorrect. Such a construction is inconsistent with the broad wording and purpose of the statute, and would render superfluous the language proscribing attempts by "any person" to make "any unauthorized connection . . . in any unauthorized manner . . . to learn the contents . . . of any . . . communication . . . " Indeed, the California Supreme Court has stated "[w]e have read section 631 as prohibiting far more than illicit wiretapping.' (<u>Ribas v. Clark</u> (1985) 38 Cal.3d 355, 360.) Rather, Penal Code section 631 is aimed at the secret monitoring of conversations, by any unauthorized means, by third parties. [FN 5]

[FN 5: Petitioner's argument relies on case law which pre-dates the personal computer era [and] is outdated and irrelevant here.]

For these same reasons, petitioner's claim that defense counsel should have objected to 'any jury instructions' which allowed a conviction on the basis of the evidence presented is also meritless.

**b) Alleged Failure to Call Available Defense Witnesses**

Petitioner bears the burden of pleading facts which, if proven true, would entitle him to relief. [Citation.] In order to meet this burden, he must state with particularity the facts upon which he is relying to justify relief. [Citation.] 'Such factual allegations should also be supported by [reasonably available] documentary evidence or affidavits." (<u>In re Harris</u> (1993) 5 Cal. 4th 813, 826 fn. 5.)

Petitioner's claim that defense counsel's performance was deficient in that he failed to call three of his friends to testify as to how he came into possession of the concert ticket fails to state a prima facie case for relief. At no time did he claim to have given this information to his attorney and the transcript of his cross-examination shows that he was only able to vaguely name one of the three individuals who provided declarations in support of the petition.

**c) Alleged Failure to Argue Lack of Requisite Intent to Instill Fear in the Victim**

Petitioner's claim hinges on whether he had a viable lack of intent defense. If not, then counsel's failure to pursue it had no bearing on

the outcome of the case. In other words, even if the failure to pursue a lack of intent defense fell below the objective standard of care, if such defense was ultimately unavailing, petitioner was not prejudiced.

Stalking is defined as: '[a]ny person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family . . .' (Pen. Code, § 646.9, subd. (a).) This section defines 'harasses' as '[engaging] in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose.' (Pen. Code § 646.9, subd. (e)); 'course of conduct' as 'two or more acts occurring over a period of time, however short, evidencing a continuity of purpose' (Pen. Code § 646.9(f)); and 'credible threat' as 'a verbal or written threat, including that performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or combination of verbal, written, or electronically communicated statements and conduct, made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family.' (Pen. Code § 646.9(g)).

Penal Code section 646.9 does not require that the defendant actually intend to carry out the threat. It is enough that the threat causes the victim reasonably to fear for her safety or the safety of her family, and that the accused makes the threat with the intent to cause the victim to feel that fear. [Citation.] Further, intent can be inferred from circumstantial evidence. [Citation.] Indeed, it is recognized that 'the element of intent is rarely susceptible of direct proof and must usually be inferred from all the facts and circumstances disclosed by the evidence.' [Citation.] In determining whether a threat occurred, the entire factual context, including the surrounding events and the reaction of the listeners, must be considered. [Citation.]

Based solely on the limited evidence presented by petitioner, it appears that the record more than amply demonstrated that the victim feared petitioner, had reason to fear him, and that he acted with the intention of inducing that fear. In fact, petitioner admitted on cross examination that, as of August 25, 2010, he was aware that his action caused the victim to fear for her safety and that he continued with the same course of conduct anyway. (See Ex. 1, pp. 1258-1259.) [FN 6]  These circumstances are extremely similar to those of People v. Falck, supra, in which the court found that the defendant's conduct conveyed a credible threat.

[FN 6:  On that day, petitioner made a journal entry stating 'I'm proud/pleased that she is so scared for her safety that she avoids being home especially by herself.' [Ex. 1, p. 1311.] He followed up with 'I'm distraught and sad of what that genuine fear signifies

in regards to her view, feelings about me.' (Ibid.)]

Accordingly, petitioner's claim that defense counsel's asserted failure to argue a lack of intent to instill fear fails to satisfy either prong of an ineffective assistance of counsel claim. Even if the court were to find that counsel should have at least made the argument, petitioner's claim would fail as he cannot demonstrate prejudice.

**(d) Alleged failure to make an Evidence Code 782 Motion in order to be able to introduce evidence of the victim's sexual conduct throughout the relevant time period**

Evidence Code section 782 imposes a procedural limitation upon the admissibility of evidence of sexual conduct of the alleged victim of rape or a related offense offered to attack her credibility. Contrary to petitioner's belief, Evidence Code section 782 only comes into play when a defendant is charged with one of the enumerated sex offenses. As the Penal Code sections 220 and 243(e)(1) charges were dropped, Evidence Code section 782 was inapplicable.

Petitioner's claim is meritless.

(Lod. Doc. 10.)

The Supreme Court has enunciated the standards for judging ineffective assistance of counsel claims. See Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine, whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also United States v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985); United States v. Schaflander, 743 F.2d 714, 717-718 (9th Cir. 1984) (per curiam).

As to ineffective assistance claims in the federal habeas context, the Supreme Court has instructed: "The standards created by Strickland and § 2254(d) are both 'highly

18

deferential,' . . . and when the two apply in tandem, review is 'doubly' so[.] . . . . When §
2254(d) applies, the question is not whether counsel's actions were reasonable. The question is
whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."
Richter, 562 U.S. at 105 (internal citations omitted).

Here, the state court reasonably applied Strickland to petitioner's claims.   Petitioner
cannot show prejudice stemming from his counsel's failure to research the wiretapping statute,
for the reasons set forth above.  His argument that Ortiz should have sought to suppress highly
relevant evidence of emails and videos, created through the use of spyware and hidden cameras,
is meritless.

As to the concert ticket that was the subject of a burglary count, petitioner testified at trial
that he did not take the ticket from Duenas' house when he broke in on July 23, 2010, but that "a
friend organized the group, um, and we bought them as a group and I paid whoever bought 'em."
(RT 1234.)  The declarations submitted with the petition add little to this statement, as petitioner's
friends declare that they attended the event with him and sat in the same section as him, but none
attest to selling petitioner a ticket.  On this record, petitioner cannot show that he was prejudiced
by the omission of additional testimony by his friends.

Petitioner argues that his counsel failed to present a mens rea defense to the stalking
charge, as petitioner wished.  However, the state court concluded that petitioner had no viable
defense to the stalking on this basis, as there was "more than ampl[e]" evidence to satisfy the
elements of stalking under California law.  The record supports this conclusion.  Thus petitioner
has not shown prejudice on this basis.

Finally, petitioner has not shown that past sexual activities between the victim and himself
were relevant to the charge of stalking, or that his counsel was ineffective in failing to offer this
evidence after it had been deemed irrelevant at the outset of trial.  In sum, petitioner is not entitled
to habeas relief on any of the above claims.

Claim B2: Failure to Object to Evidence of Uncharged Sexual Acts.  Petitioner argues that
his counsel was ineffective for failing to object to testimony about petitioner's attempted or actual
sexual assaults on the victim on August 2 and August 3, 2010.  (RT 605-640.)  Sexual assault

charges based on these incidents were dropped before trial. (RT 197.) The victim testified that the August 2 incident was consensual (RT 605), and while her testimony about the August 3 event described aggressive behavior by petitioner, she never testified that he forced her to have sex, or that sex occurred, on that date.

At a pretrial hearing on the scope and admissibility of this evidence, the trial court observed that that prosecutor sought to introduce the August 3 incident as "the beginning of their – their rift, beginning of some fear being introduced into the relationship." The prosecutor agreed that the August 3 events were "the beginning of the stalking charge" and thus relevant. (RT 201.) The prosecutor also argued that the August 2 incident was relevant because "that's something the defense will ask her about," but it warranted only a brief mention. (RT 204-205.)

On habeas review, the state court addressed this claim as follows:

> **(e) Alleged Failure to Object, Pursuant to Penal Code Section 352 . . . , to the Admission of Evidence About Uncharged Sexual Assaults That Allegedly Took Place on August 2 and 3, 2010**
>
> Evidence Code section 1101(a) generally prohibits 'evidence of a person's character or a trait of his or her character' when it is 'offered to prove his or her conduct on a specified occasion.' However, Evidence Code section 1101(b), creates an exception by allowing the introduction of evidence that a person committed a crime, civil wrong, or other act 'when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.' Thereafter, the court in its discretion may 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code § 352.)
>
> Petitioner's claim that he received ineffective assistance of counsel when his attorney failed to object to the admission of evidence of the uncharged sexual assaults fails to state a prima facie case for relief as he has not articulated any prejudice. His claim that this evidence may have been inappropriately used by the jury to infer that he did assault the victim, that he intended to cause her further harm, and that he was stalking her for the purpose of sexually assaulting her all relate to the two sexual assault charges which were dismissed.
>
> Further, it is noted that petitioner has not attached a complete copy of the trial transcripts. In fact, he has failed to attach any of the

20

1    pages containing the admissibility of this evidence.  Accordingly,
     he has also failed to satisfy the requirements of People v. Duvall,
2    supra; In re Swain, supra; and In re Harris, supra.

3    Moreover, a trial court, after an appeal from a judgment of
     conviction rendered by it in a criminal action has been perfected, is
4    without authority to discharge through habeas corpus proceedings
     the appellant during the pendency of that appeal, for any error,
5    defect, or other infirmity appearing or existing in the proceedings
     taken in that action which was or might have been legally presented
6    to the appellate court on the appeal [citations].  As petitioner is
     currently challenging his conviction on appeal, he should have
7    challenged the admission of this evidence in that forum.

8    Finally, contrary to petitioner's claim, the underlying file reflects
     that the court did give the jury a limiting instruction pursuant to
9    Evidence Code section 355.  Page 932 of the clerk's transcript
     reflects that the court gave Judicial Council of California Criminal
10   Jury Instructions (CALCRIM) number 303, Limited Purpose
     Evidence in General.

11

12   (Lod. Doc. 10.)

13        Even assuming arguendo that Ortiz had no valid tactical reason for not objecting to

14   Duenas' testimony about the August 2 and 3, 2010 incidents, petitioner has not shown he was

15   prejudiced by the lack of objection to this testimony.  As the events of August 2 and 3, 2010 were

16   discussed at length in a pretrial hearing and deemed relevant, subject to limitations, it is unlikely

17   that any objection during the victim's testimony would have been sustained.  Moreover, the state

18   court reasonably noted that any evidence of attempted sexual assault could not be used to convict

19   petitioner of this offense, as those charges had been dropped.

20        Petitioner further argues that he was prejudiced by the lack of a specific limiting

21   instruction that cautioned the jury against considering the August 3 evidence for improper

22   purposes.  (Ptn. at 72.)  "Thus, undue prejudice flowed from the jury's permitted misuse of such

23   testimony for an inadmissible purpose, i.e., that Petitioner assaulted [the victim] and harbored an

24   intent to further harm her."  (Id.)  However, there was no evidence that petitioner harmed the

25   victim, only that his actions frightened her, which pertained to the stalking charges.  Petitioner

26   has not shown ineffectiveness or prejudice based on his attorney's failure to request such an

27   instruction.

28   ////

Claim B3: Cumulative Error.   Petitioner contends that the cumulative effect of the errors made by his trial counsel entitle him to federal habeas relief.   However, as he has demonstrated no constitutionally significant error in the presentation of his defense, he is not entitled to habeas relief on this basis.

C.   Ineffective assistance of appellate counsel

In his final set of claims, petitioner contends that his appellate counsel was constitutionally ineffective on two grounds.  (Ptn. at 75-96.)  Both claims were summarily denied by the state court of appeal and the California Supreme Court on habeas review.

Claim C1: Failure to appeal denial of suppression motion.  Petitioner's defense attorney filed a pretrial motion to suppress evidence obtained from petitioner's home on September 14, 2010 pursuant to a search warrant.  (CT 404-429.)  The motion argued that the affidavit by Sacramento Detective Eric Schneider was facially deficient in three ways: (1) foundational inadequacy of Det. Schneider's expertise, as Schneider was not an expert in criminal stalking; (2) lack of specificity; and (3) insufficient factual basis for the determination of probable cause.  (Id.) The trial court denied the motion, finding that Det. Schneider, a detective of several years, had sufficient experience for purposes of an affiant; that the warrant did not call for "an open-ended investigation into all of Mr. Moreno's media" but was inherently limited as to time; and that the victim's statements were sufficiently credible to constitute probable cause for purposes of issuing the warrant.  (RT 97-100.)  Petitioner contends that his appellate attorney was constitutionally ineffective for failing to raise this issue on appeal.  As the state courts' denial of this claim was not unreasonable under the stringent AEDPA/Strickland test, petitioner is not entitled to federal habeas relief on this ground.

Claim C2: Insufficiency of the evidence.  Petitioner asserts that his appellate counsel was ineffective for failing to challenge his burglary and stalking convictions for insufficient evidence. (Petitioner's assertion that there was insufficient evidence to support the wiretapping convictions is addressed separately, above.)  The trial record contains substantial evidence in support of these convictions, such that a reasonable attorney could have deemed these claims frivolous on appeal. Thus petitioner has shown neither ineffectiveness or prejudice on this basis.  In sum, he has made

1   no showing of entitlement to federal habeas relief.

2      Accordingly, IT IS HEREBY RECOMMENDED that the petition (ECF No. 1) be denied.

3      These findings and recommendations are submitted to the United States District Judge

4   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5   after being served with these findings and recommendations, any party may file written

6   objections with the court and serve a copy on all parties.  Such a document should be captioned

7   "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner

8   may address whether a certificate of appealability should issue in the event he files an appeal of

9   the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district

10   court must issue or deny a certificate of appealability when it enters a final order adverse to the

11   applicant). Any response to the objections shall be served and filed within fourteen days after

12   service of the objections.  The parties are advised that failure to file objections within the

13   specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d

14   1153 (9th Cir. 1991).

15   Dated:  April 27, 2017

16

           _____
17            CAROLYN K. DELANEY
           UNITED STATES MAGISTRATE JUDGE

18

19

20

21   2 / more0704.hc

22

23

24

25

26

27

28